**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **MICHAEL OSWALD,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-721** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\*\*\*\*\*\***

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Plaintiff Michael Oswald seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act.  Before the Court are Plaintiff's Motion for Summary Judgment and alternative motion for remand (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 17).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

# I

## Background

Plaintiff was born in 1972, has a tenth-grade education, and previously worked as a construction worker.  R. at 24.  Plaintiff filed an application for DIB protectively on November 30, 2011, and for SSI on December 20, 2011, alleging disability beginning on October 15, 2011, due to brain injury from head trauma, seizures, neck and back fractures, depression, and panic attacks.  R. at 12, 241-55, 276, 279.  The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 69-157, 160-63.  On September 15, 2014, ALJ William T. Vest, Jr., held a hearing at which Plaintiff and a vocational expert ("VE") testified.  R. at 40-68.  On October 10, 2014, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of October 15, 2011, through the date of the decision.  R. at 9-31.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on January 9, 2015.  R. at 1-8, 339-40.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On March 16, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

## II

## <u>Summary of Evidence</u>

**A.      State Agency Medical Consultants**

On June 5, 2012, a state agency medical consultant, W. Hakkarinen, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 79-81, 97-99.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 79, 97.  Because of Plaintiff's neck pain and seizure disorder, he occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds).  R. at 80, 98.  Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid even moderate exposure to hazards, such as machinery and heights, because of his seizure disorder.  R. at 80-81, 98-99.

On June 6, 2012, another state agency consultant, Pauline Hightower, Psy.D., using the psychiatric review technique ("PRT") under 20 C.F.R. §§ 404.1520a and 416.920a, evaluated Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09 relating to affective disorders, anxiety-related disorders, and substance addiction disorders (R. at 76-78, 94-96).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06, 12.09.  Dr. Hightower opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 76, 77, 94, 95.  Dr. Hightower did not find evidence to establish the presence of the criteria under paragraph C of the

applicable listings. R. at 76, 77, 94, 95. Dr. Hightower thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 81-85, 99-103) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) respond appropriately to changes in the work setting; and to (6) set realistic goals or make plans independently of others. R. at 81-82, 83-84, 99-100, 101-02. Plaintiff otherwise was not significantly limited. R. at 81-84, 99-102. Dr. Hightower opined: "[Plaintiff] can understand, retain, and carry out simple/repetitive instructions. [Plaintiff] can perform routine tasks on a sustained basis, with special supervision, and can cooperate [with] co-workers in completing simple tasks and transactions. [Plaintiff] can adjust to modest mental demands of the work place." R. at 83, 84, 101, 102.

On December 3, 2012, another state agency consultant, Karen Sarpolis, M.D., again assessed Plaintiff's physical RFC. R. at 118-22, 139-43. Dr. Sarpolis opined that Plaintiff could (1) lift and/or carry twenty pounds occasionally and ten pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling. R. at 118-19, 120-21, 139-40, 141-42. Because of Plaintiff's neck pain and seizure disorder, he occasionally could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds). R. at 119, 121, 140, 142. Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid even moderate exposure to hazards, such as machinery and heights, because of his seizure disorder. R. at 119-20, 121-22, 140-41, 142-43.

On December 10, 2012, another state agency consultant, Elliott Rotman, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04, 12.06, and 12.09. R. at 114-17, 135-38.  Dr. Rotman opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration. R. at 115, 116, 136, 137.  Dr. Rotman did not find evidence to establish the presence of the criteria under paragraph C of the applicable listings. R. at 115, 116, 136, 137. Dr. Rotman thus assessed Plaintiff's mental RFC (R. at 122-26, 143-47) and opined that he was moderately limited in his ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) sustain an ordinary routine without special supervision; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) respond appropriately to changes in the work setting; and to (6) set realistic goals or make plans independently of others. R. at 122-23, 143-44.  Plaintiff otherwise was not significantly limited. R. at 122-26, 143-47.  Dr. Rotman opined: "[Plaintiff] can understand, retain, and carry out simple/repetitive instructions.  [Plaintiff] can perform routine tasks on a sustained basis, with special supervision, and can cooperate [with] co-workers in completing simple tasks and transactions.  [Plaintiff] can adjust to modest mental demands of the work place." R. at 124, 145.

Dr. Rotman then assessed Plaintiff's mental RFC in the presence of his alcohol abuse (R. at 124-26, 145-47) and opined: "[Concentration, persistence, or pace] is determined by [Plaintiff's] abuse of alcohol.  His periods of decompensation and recent episodes of

hospitalization have all been precipitated by his drinking.  If abstaining from [alcohol] he is able to sustain [concentration, persistence, or pace] for simple tasks."  R. at 125, 146.  Dr. Rotman found that,

> [o]n [reconsideration], the [medical evidence of record] presents [Plaintiff] as decompensating and in a few instances, needing hospitalization precipitated by his drinking.  [Drug abuse/alcoholism] presents as material as when [Plaintiff] is sober his depression is better and he can understand, retain, and carry out simple instructions, relate in a reasonably appropriate manner, and sustain [concentration, persistence, or pace] for non-complicated tasks.  [Plaintiff] can adjust to modest mental demands in the work place.

R. at 125-26, 146-47.

**B.      Hearing Testimony**

**1.      Plaintiff's Testimony**

The ALJ reviewed Plaintiff's testimony in his decision:

> At the hearing, [Plaintiff] testified that he is currently not working, and he last worked in 2011.  He testified that he fell off a roof while on the job on October 15, 2011, and he sustained head trauma.  [Plaintiff] testified that he has looked for work since then, but contractors will not hire him, because his doctors will not release him to work.  He testified that he has seizures, fractures of the neck and back, depression, anxiety, personality disorder, and substance abuse issues.  [Plaintiff] testified that he has had difficulty with the legal system.  He testified that he last consumed alcohol (ETOH) in February 2014.  [Plaintiff] testified that he lost his driver's license, because of a DWI in 2005, and so he uses public transportation.  He testified that he has pain in his lower back, neck, and shoulders; he has migraines from the metal rod in his head; and he has panic attacks.  [Plaintiff] also testified that he takes certain medications, which help him.

R. at 22; *see* R. at 43-65.  Plaintiff further testified that his depression prevented him from getting out of bed "[o]nce or twice a week maybe."  R. at 60.

**2.      VE Testimony**

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III (and instead "no squatting") could

perform the unskilled, light[2] jobs of laundry folder, sorter, or mail clerk.  R. at 66.  According to

the VE, his testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 67.  A

person "off task" more than 20% of the workday would not be able to work.  R. at 67.  A person

absent from work two or more days per month would not be able to maintain employment.  R. at

67.

### III

### Summary of ALJ's Decision

On October 10, 2014, the ALJ found that Plaintiff (1) had not engaged in substantial

gainful activity since the alleged onset date of disability of October 15, 2011, and (2) had severe

impairments, including substance use disorder (polysubstance abuse by history), which (3) met

Listings 12.04(C)(1) and 12.09(B) set forth in 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04(C)(1)

and 12.09(B).  R. at 15-16.  The ALJ found, however, that, if Plaintiff stopped the substance use

(polysubstance abuse by history), he (1) would continue to have a severe impairment or

combination of impairments, but (2) would not have an impairment or combination of

impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P,

app. 1, and (3) would be unable to perform his past relevant work, but (4) could perform other

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(b), 416.967(b).  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  *Id.* §§ 404.1568(a), 416.968(a).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

work in the national economy, such as a laundry folder, sorter, or mail clerk.  R. at 17-25.  The

ALJ found that Plaintiff's substance use disorders (polysubstance abuse by history) were

contributing factors material to the determination of disability because he would not be disabled

if he stopped the substance use.  R. at 25.  The ALJ thus found that he was not disabled from

October 15, 2011, through the date of the decision.  R. at 25.

In so finding, the ALJ found that, if Plaintiff stopped the substance use (polysubstance

use by history), he would have the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except
> for the following: [Plaintiff] would not be able to climb ladders; [Plaintiff] would
> not be able to work at unprotected heights; [Plaintiff] would not be able to work
> around dangerous machinery; [Plaintiff] would be able to perform only occasional
> stooping and squatting; [Plaintiff] would not be able to perform any crawling; and
> [Plaintiff] would be limited to performing simple, repetitive, and nonproduction
> job tasks.

R. at 21.  The ALJ also considered Plaintiff's credibility and found that, if he stopped the

substance use (polysubstance abuse by history), his "medically determinable impairments could

reasonably be expected to produce the alleged symptoms; however, [his] statements concerning

the intensity, persistence, and limiting effects of these symptoms are not fully credible to the

extent they are inconsistent with the [RFC] assessment for the reasons explained below."  R. at

22.

The ALJ found that, with regard to concentration, persistence, or pace,

> [Plaintiff] would have moderate difficulties, if the substance use (polysubstance
> abuse by history) was stopped.  In a function report, dated January 27, 2012,
> [Plaintiff] reported that he is not able to pay bills; he is not able to use a
> checkbook / money orders; he needs to be reminded to go places; he does not
> finish what he starts; he cannot remember things; he does not follow written
> instructions very well; and he does not follow spoken instructions well [R. at 303-
> 10].  However, [Plaintiff] also reported that he helps take care of his girlfriend's
> children and grandchildren; he cooks for them at times; he helps take care of pets;
> he does not need any special reminders to take care of his personal needs and
> grooming; he prepares his own meals; he does certain household chores, including

cleaning and fixing small things; he goes shopping in stores; he is able to count change; he is able to handle a savings account; he does a decent job of handling stress; and he handles changes in his routine as well as he can [R. at 303-10].

R. at 20.

## IV

## **Disability Determinations and Burden of Proof**

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.    20 C.F.R.  §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R.  §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.  *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R.

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R.  §§ 404.1521(b), 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

§§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R.   §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing material factor to the determination of disability.   *Id.* §§ 404.1535(a), 416.935(a).

The key factor is whether the ALJ still would find the claimant disabled if the drug or alcohol use stopped. *Id.* §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a material contributing factor, and a determination of disability is prohibited. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff contends that the ALJ erroneously assessed his RFC contrary to Social Security Ruling[5] ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996). Pl.'s Mem. Supp. Mot. Summ. J. 4-8, ECF No. 16-1. Plaintiff maintains that the ALJ failed to perform properly a function-by-function assessment of his ability to perform the physical and mental demands of work. *Id.* at 6. In particular, he contends that, although the ALJ found that he had moderate difficulties with regard to concentration, persistence, or pace, the ALJ failed to include any limitation on concentration, persistence, or pace in the RFC assessment, instead limiting him to simple, routine, and non-production job tasks. *Id.* at 6-7. Plaintiff further asserts that the ALJ failed to evaluate properly pertinent evidence of the state agency consultants' opinions. *Id.* at 7 (citing R. at 83, 124).

---

[5] Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the Social Security Administration. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass*, 65 F.3d at 1204 n.3.

According to Plaintiff, substantial evidence thus does not support the ALJ's RFC assessment. *Id.* at 8. Because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

> SSR 96-8p explains how adjudicators should assess RFC and instructs that the RFC
>
> > "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations. "Only after that may [residual functional capacity] be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." The Ruling further explains that the residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted) (citations omitted). The Fourth Circuit has held, however, that a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, __ F.3d __, No. 15-1098, 2016 WL 3349355, at *9-10 (4th Cir. June 16, 2016) (remanding because ALJ erred in not determining claimant's RFC

using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing his RFC, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 16-1.  In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task.  Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."  *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in

Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).   With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[*a*]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).   "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.*   Moreover, "[*s*]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."   *Id.* § 12.00(C)(2).   Further, "[*c*]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."   *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.  In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."   *Id.*   Finally, "[*e*]*pisodes of decompensation* are exacerbations or

temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC to "nonproduction job tasks" (R. at 21) accounts for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that hypothetical question that referenced individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, or pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that ALJ captured claimant's moderate limitation in concentration, persistence, and pace when ALJ included restriction of "no high production goals"); *Arnold v. Barnhart*, 473 F.3d 816, 820 (7th Cir. 2007) (using low production standards for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her

limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."); *see also Chase v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2961, 2016 WL 199410, at *3 (D. Md. Jan. 15, 2016) (determining that ALJ's assessment of claimant's RFC to "no production rate or paced work" accounted for claimant's moderate limitation in concentration, persistence, or pace); *Shirey v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-15-261, 2015 WL 7012718, at *4 (D. Md. Nov. 10, 2015); *Rayman v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3102, 2015 WL 6870053, at *3 (D. Md. Nov. 6, 2015) ("[T]he limitation to an environment with few changes and no production quotas assures that [the claimant] is not required to produce any particular volume of work-product and is not distracted or required to adapt to changes in the workplace.  Thus, the ALJ accounted for any time that [the claimant] would be off-task due to his limited ability to maintain focus."); *Gair v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-3652, 2015 WL 5774982, at *2 (D. Md. Sept. 28, 2015) (finding that ALJ adequately accounted for claimant's moderate limitation in concentration, persistence, or pace by limiting him to work with no strict production quotas).  Plaintiff's argument that the ALJ failed to account for his moderate limitations in concentration, persistence, or pace in the RFC assessment and hypothetical questions to the VE under *Mascio* thus is unavailing.

However, the ALJ's finding in his decision that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [his] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (R. at 22) "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'"  *Mascio*, 780 F.3d at 639 (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Posner, J.)).  Rather, the ALJ should compare the claimant's

alleged functional limitations from pain to the other evidence in the record, not to the claimant's RFC. *See id.* "[A] claimant's pain and residual functional capacity are not separate assessments to be compared with each other. Rather, an ALJ is required to consider a claimant's pain as part of his analysis of residual functional capacity." *Id.*

The ALJ's use of the problematic boilerplate language would not require remand, however, if the ALJ "properly analyzed [Plaintiff's] credibility elsewhere." *Id.*; *see, e.g.*, *Sevens v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-1900, 2015 WL 2402821, at *2 (D. Md. May 19, 2015). The Fourth Circuit reiterated the following standard in evaluating a claimant's complaints of pain or other symptoms. *Dunn v. Colvin*, 607 F. App'x 264, 272-73 (4th Cir. 2015). Whether "a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 272 (quoting *Craig*, 76 F.3d at 594). "At this stage of the inquiry, the pain claimed is not directly at issue; the focus is instead on establishing a determinable underlying impairment—a statutory requirement for entitlement to benefits—which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Id.* at 272-73 (quoting *Craig*, 76 F.3d at 594). Second, after the first inquiry is complete, the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). "[T]his evaluation must take into account not only the claimant's statements about her pain, but also 'all the available evidence,' including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues,

redness, etc.) . . . ." *Craig*, 76 F.3d at 595 (citation omitted); *see* 20 C.F.R. §§ 404.1529(c)(1)-(2), 416.929(c)(1)-(2).  The ALJ must also take into account "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it."  *Craig*, 76 F.3d at 595; *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see* SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

In this case, in determining Plaintiff's RFC, the ALJ chose to credit some, but not all, of his statements (R. at 20, 22).  *See Mascio*, 780 F.3d at 639-40.  Plaintiff testified that his depression prevented him from getting out of bed "[o]nce or twice a week maybe," even though his antidepressants helped.  R. at 60, 61.  According to the VE, no work would be available to a person absent from work two or more days per month.  R. at 67.  "Nowhere, however, does the ALJ explain how he decided which of [Plaintiff's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering" Plaintiff's RFC.  *Mascio*, 780 F.3d at 640.  Moreover, the ALJ found that Plaintiff's depression was a severe impairment even absent his substance abuse (R. at 17 (citing R. at 1466-95)), and the ALJ concluded that this impairment, among others, could reasonably be expected to produce his claimed symptoms (R. at 22).  The ALJ never specifically found whether Plaintiff's depression would cause him to miss work at least two days per month, however.  Rather, the ALJ concluded that Plaintiff was capable of light work with exceptions and that his claimed symptoms were "not fully credible to the extent they are inconsistent" with the RFC assessed by the ALJ.  R. at 22.  The Fourth Circuit has "held that '[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and

specific application of the pertinent legal requirements to the record evidence.'" *Monroe*, 2016 WL 3349355, at *10 (alteration in original) (quoting *Radford*, 734 F.3d at 295). Because the inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case under the fourth sentence of 42 U.S.C. § 405(g) for the ALJ to consider Plaintiff's impairments and determine, on a function-by-function basis, how they affect his ability to work. *See id.* "Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning [Plaintiff's] ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy." *Id.* (citing *Mascio*, 780 F.3d at 636). The Court need not address Plaintiff's remaining arguments.

## VII

## <u>Conclusion</u>

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 16) is **GRANTED**. Defendant's final decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g). This matter is **REMANDED** for further proceedings consistent with this opinion. A separate order shall issue.

Date: August 1, 2016                                    _____/s/_____

                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge